The Sanders built their $87,600 home on Mrs. Sanders' lot in Montclair. Mr. Sanders made the contract with Hall-Clough, Incorporated, builder, June 24th, 1929, filed with the county clerk July 15th, 1929. While the building was *Page 163 
in progress a contract between Mrs. Sanders and the builder, a duplicate, was filed November 29th, 1929. It was antedated June 24th, 1929. Hall-Clough, Incorporated, defaulted; it was adjudged insolvent and receivers were appointed May 2d 1930. The Sanders finished the building and paid the balance of the contract price, $9,939.78, into court and called upon subcontractors, who had filed stop-notices, to interplead. The master to whom the matter was referred reported the claims and this as the order of their priority:
 Van Sant-Willis Co. ............................... $2,612.90
 F.W. Traeger Sons, Inc. ......................... 300.00
 O'Hara, Inc. ...................................... 1,200.00
 Osborne Marsellis Co. ........................... 1,167.51
 Moeltner Sheet Metal and Roofing Co. .............. 1,386.86
 Brawn Chamberlin, Inc. .......................... 2,500.00
 Carrier Lyle Corp. ................................ 5,882.50

Carrier Lyle Corporation protests that it should have been adjudged third. Van Sant-Willis Company's stop-notice was served May 2d 1930; the rest were served May 5th, and all on Mrs. Sanders, save Carrier Lyle's, which was served on Mr. Sanders third in point of time, after Traeger Sons and before O'Hara, Incorporated, but because Carrier Lyle's notice was not brought to Mrs. Sanders' attention by Mr. Sanders on May 5th until after the other notices had been served on her, the master relegated it to seventh place. In this he erred.
The validity of the stop-notices is not open to question. It is immaterial whether the building was erected under Mr. Sanders' contract or under Mrs. Sanders' later contract for, in either event the subcontractors have stop-notice rights under section 3 of the Mechanics' Lien act. If the house was built under Mr. Sanders' contract, it having been built on Mrs. Sanders' land in which he had no estate, and the contract having been filed, her land became charged with the mechanics' lien of the contractor and she became charged with liability to subcontractors filing stop-notices precisely as if it had been built under her contract. Gardner Meeks Co. v. *Page 164 Herold, 76 N.J. Law 524. We are concerned only with the priorities of the stop-notices. A stop-notice works an assignment of the fund due the contractor (Carlisle v. Knapp,51 N.J. Law 329) and the order of service marks the order of the owner's responsibility. If the service of the Carrier Lyle's notice upon Mr. Sanders bound Mrs. Sanders to pay the claim, the point of time when her liability began fixes its priority. Her order of responsibility is the test. Whether it bound her depends upon the fact of his agency, authorized, acknowledged or implied, and Mr. Sanders' activities are, therefore, of importance in determining his agency for the service of stop-notices. If we regard the house as having been built for Mrs. Sanders by Mr. Sanders under his contract, agency is implied in law, and service upon him was effective. J.D. Loizeaux Lumber Co. v. Steinberg,102 N.J. Law 15. We need not, however, rest on legal implication, for not only does it appear that Mr. Sanders' contract was made in Mrs. Sanders' behalf, as her agent, which finds confirmation in her later and novating contract, but it is not open to dispute, and it is not questioned, that he was in absolute charge of the construction of the building. He made the bargain, supervised the construction and paid the bills. All commitments of subcontractors with the contractor (except Traeger Son and Osborne Marsellis Company), upon which their stop-notices are based, were made complementary to Mr. Sanders' contract with Hall-Clough, Incorporated, long before Mrs. Sanders' contract was filed. When the contractor fell down, Mr. Sanders finished the job and what money was left he paid into court under his contract; the bill so reads. Mrs. Sanders' contract was first brought into the case by a stipulation entered before the master. If Carrier Lyle Company had knowledge, and it is insisted that it is charged with notice of the public records, that Mrs. Sanders was the owner of the land, it was its right to assume, and it rightly assumed, that Mr. Sanders was, as she acknowledged and held him out to be, the agent of Mrs. Sanders. Clothed with plenary authority to build the house, manifestly included agency for the service of stop-notices upon the money in his hands to pay for the house. *Page 165 
Carrier Lyle's notice was left at Mr. Sanders' place of business in New York with his secretary, who immediately got in touch with him by telephone, and informed him of it. That was between twelve and one P.M. The O'Hara, Incorporated, notice was served at four-thirty P.M. Mrs. Sanders endorsed on the notices as they were served on her their chronological order of service. That she considered the service of the Carrier Lyle notice as having been made upon her, and that she regarded her husband as her agent in this as in all other matters pertaining to the house and the fund, is clearly evinced by the re-arrangement she made of the order of service after he returned home in the evening with the Carrier Lyle notice to which she then gave third place, remarking O'Hara's from third to fourth and the rest in sequence.
The contestants' stop-notice claimants attack Carrier Lyle's claim for insufficiency of demand and refusal of payment by the contractor before service of notice on Mr. Sanders. The master found as a fact that demand had been made and payment refused, and the testimony sustains his findings. Further, the insolvency of Hall-Clough, Incorporated, three days before service of the notice dispensed with demand. It would have been futile, as would have been the service of stop-notices on the contractor required by the 1917 amendment of section 3 of the Mechanics' Lien act (Cum. Supp. Comp. Stat. p. 1851). J.D. Loizeaux Lumber Co. v.Steinberg, supra. The exception is sustained.
Carrier Lyle's notice will be accorded third place.
Interest on claims and allowance to the solicitor of the complainant will be considered upon motion for decree. *Page 166